GLADYS T. PITTS, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

G. BRYAN PITTS, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 58778, 58879, 61266, 62201. Promulgated June 8, 1932.

*W. W. Ross, Esq.*, and *Richard S. Doyle, Esq.*, on petition for intervention.

*Byron U. Graham, Esq.*, and *Walter N. Tobriner, Esq.*, for the petitioners.

*C. H. Curl, Esq.*, for the respondent.

#### OPINION.

MURDOCK: The Commissioner mailed two deficiency notices, each addressed to G. Bryan Pitts and Gladys T. Pitts. The one notified them of the determination of income tax, penalty and interest amounting to $1,573,600.82, for the taxable years 1926, 1927, and 1928,

and of the assessment of this amount. The other notified them of the determination of a deficiency of tax and penalty for the year 1929 amounting to $282,799.50. Each of these individuals filed a separate petition based on each deficiency notice.

We are concerned for the time being in these proceedings with the motion of the F. H. Smith Company for leave to intervene, which is opposed by the petitioners and the respondent. The motion, based upon allegations of an intervening petition lodged with the Board, sets forth the following grounds:

1. The intervenor has an interest in the controversy contrary to the interests of the petitioners and the respondent.

2. The intervenor's interest will not be protected unless this intervention is allowed.

3. The intervening petition offers no new issue, and the proceedings will be simplified by the evidence which only the intervenor can be expected to adduce.

4. The Board can not completely administer justice under the facts of the case unless this motion is. granted.

5. The Board will not be able to determine the correct tax liability of the petitioners without the facts to be presented by the intervenor.

6. Multiplicity of proceedings will be avoided by the intervention.

7 Matters are involved in this proceeding which affect the tax liability of the intervenor in other proceedings recently filed and now pending before the Board.

8. Unless this intervention is granted irreparable loss and damage will result to the intervenor by a settlement between respondent and petitioners, which is now being negotiated.

The proposed intervening petition contains allegations that the F. H. Smith Company is a Delaware corporation, with its principal office at Wilmington; it has a direct interest in the subject matter in controversy contrary to the interests of the petitioners and the respondent, which will not be protected unless intervention is granted; the corporation was completely reorganized in September, 1931, but for some years prior to that date G. Bryan Pitts dominated and controlled it; between February, 1918, and January 18, 1930, G. Bryan Pitts was a director and officer of the corporation and embezzled from it large sums of money in excess of $2,000,000, and converted to his own use other property of the corporation consisting of stocks, bonds, other securities, and other personal property having a total value in excess of $1,000,000; the corporation did not discover these embezzlements or conversions until December, 1930; since reorganization the present officers of the company have been. endeavoring to learn the true facts regarding Pitts' manipulations of its funds; Pitts acquired various kinds of property with the money and property thus obtained, and transferred possession and apparent title to some of the property to his wife, Gladys T. Pitts, details of which transfers are unknown to the corporation; during

each of the taxable years involved in these proceedings, Pitts had legitimate income not in excess of $5,000 per annum exclusive of his salary as an officer of the corporation, which salary amounted to $90,000 for the year 1926 and to $30,000 for each of the years 1927, 1928 and 1929, so his correct tax liability would be less than $2,000 for any one year; all other additions made to his income by the respondent consist of money embezzled from the corporation and property of the corporation unlawfully converted by Pitts, and as such is not income to Pitts or was income derived from property belonging to the corporation; Pitts was indicted, tried, convicted and sentenced for conspiring to embezzle more than $1,000,000 belonging to the corporation; he has perfected an appeal, but has been denied bail and is being held in jail in the District of Columbia; by reason of his illegal acts, practically all, if not all, of the funds and other property involved in these proceedings are trust property under a trust *ex .maleficio*, the corporation being the *cestui que trust*; the petitioner has stated in the record in this case, that he probably will not be a witness in the hearing of these cases on account of criminal matters now pending against him; but in any event he will not testify to the embezzlement or conversion, the real defense to the respondent's claims, and the Board will be unable to truly and accurately determine the income-tax liability of either petitioner without intervention; the respondent has included money and property of the corporation in the petitioners' incomes, has determined deficiencies based thereon, has made jeopardy assessments of taxes and penalty amounting to $1,723,190.88, has had his collectors distrain upon and seize property in the possession of the petitioners, but belonging to the corporation, having a value of about $2,000,000, and claims these assessments are *prima facie* liens in favor of the United States; unless intervention is permitted to disclose the actual facts of ownership of these properties, illegal deficiencies will be imposed by the Board and the respondent will assert liens against the property of the corporation based upon the findings and decision of the Board; and the corporation is informed and believes that the petitioners and the respondent are about to file a stipulation of facts, and any settlement in accordance with such a stipulation would in all probability cause irreparable loss and damage to the corporation by reason of the liens which the respondent would then assert against the corporation's property based upon the judgment and findings of the Board. This petition also makes specific allegations in regard to various items included in the petitioners' income by the respondent, and claims upon information and belief that they are not taxable income to the petitioners, but represent money or property belonging to the corporation and unlawfully in the possession

of the petitioners, or were property purchased by Pitts with funds of the corporation. The prayer of the petition is that the intervener be permitted to file its petition and other pleadings, appear and submit evidence and be considered a party, and that the Board deny the right of the petitioners and the respondent to enter into an agreed stipulation or settlement without the consent of the intervener and grant such other relief as may be necessary or proper.

We permitted intervention in *Central Union Trust Co. et al., Executors*, 18 B. T. A. 300. The executors filed a petition contesting a deficiency in estate tax on the ground, among others, that the value of a claim against Emlen P. Frame had been erroneously determined by the Commissioner. Frame had agreed to pay any Federal estate tax resulting from the inclusion of this claim in the decedent's gross estate. The executors suggested that Frame be heard. He was permitted to intervene upon a showing that he had an interest in the estate, had agreed to pay the tax, and was under the necessity of showing, contrary to the interests of the executors, that the claim had no value. In *Louisiana Naval Stores, Inc.*, 18 B. T. A. 533, L. H. Williams was permitted to show that at the time the original petition, purporting to be that of the petitioner, was filed by D. J. Gay as president, the corporation had been dissolved and Williams was the duly authorized and qualified liquidator and the only person authorized to act on behalf of the corporation. The F. H. Smith Company has not agreed to pay the tax in this case nor could the tax be legally collected from any property belonging to or embezzled from the F. H. Smith Company or which had been wrongfully converted to the use of G. Bryan Pitts. Our affirmance of the Commissioner's determination in this proceeding will take no property from the F. H. Smith Company nor affect its rights in any direct way, whereas our affirmance of the Commissioner's determination would have directly affected Frame. Furthermore, the executors favored Frame's intervention, whereas the petitioners here oppose the intervention of F. H. Smith Company. Cf. *Leaver v. K. & L. Box & Lumber Co.*, 6 Fed. (2d) 666. Williams alleged and proved that he alone represented the petitioner, a situation which finds no parallel in this case. Obviously our decisions in those cases are no authority for permitting intervention in this case, except as they may indicate that the Board believes that it has power to permit intervention in some cases.

In the case of *Smith v. Gale*, 144 U. S. 509, we find the following in regard to intervention and the interest necessary to authorize intervention :

* * * In *Horn v. Volcano Water Co.*, 13 California, 62, 69, the Supreme Court of California had occasion to construe a similar provision of the code

of that State, and held, speaking through Mr. Justice Field, now a member of this court, that " the interest mentioned in the statute which entitles a person to intervene in a suit between other parties must be in the matter in litigation, and of such a direct and immediate character that the intervenor will either gain or lose by the direct legal operation and effect of the judgment. . . . To authorize an intervention, therefore, the interest must be that created by a claim to the demand or some part thereof in suit, or lien upon the property, or some part thereof, in suit, or a claim to or lien upon the property, or some part thereof, which is the subject of litigation." In *Lewis* v. *Harwood*, 28 Minnesota 428, the cases from Louisiana and California were cited with approval. In that case the persons who sought to intervene held attachments upon some property subsequent to those of the plaintiff in the suit. The suit was upon certain promissory notes executed to the plaintiff by the defendants, and the intervenors claimed that the notes were without consideration and fraudulent; that the plaintiff's attachments were fraudulent; and that the suit and attachments were in execution of a collusive scheme between the plaintiff and defendant to defraud the intervenors, who were · *bona fide* creditors of the defendant. It was held that the complaint of the intervenors did not disclose such an interest in the subject matter of the suit as to entitle them to intervene, and that the plaintiff's motion to dismiss the same should be granted. The decision was put upon the ground that when the judgment was entered against the defendants, the whole subject matter of the suit was disposed of, and that the writ of attachment was a part of the remedy and had nothing to do with the cause of action. " If property is seized by virtue of the writ to which another has a better right, the vindication of such right involves another and independent judicial inquiry."

The intervention must be not only to protect the direct and immediate interest of the intervenor in a suit, but she is bound to make that interest appear by proper allegations in her petition. *Coffey* v. *Greenfield*, 62 California, 602.

The real interest of F. H. Smith Company is to see that its property is not taken to satisfy the petitioners' tax liability. But this property is not the subject of the litigation before the Board and is not within our exclusive control. Cf. Foster Federal Practice, Sixth Edition, vol. 2, § 258g. *Billings* v. *Aspen M. & S. Co.*, 51 Fed. 338. We have no jurisdiction over this or any other property. We determine the deficiencies, if any. Collection is another matter, with which we have nothing whatever to do. Our decision can not even remotely or indirectly affect the rights of F. H. Smith Company in specific property. It will give the Government no right to collect the deficiencies from the property of the F. H. Smith Company. Counsel confess their inability to state how the F. H. Smith Company will be adversely affected by our decision. If we should hold that there is no deficiency, the Government might then be required to release the seized property, and one claim adverse to that of the F. H. Smith Company would be dissolved. But such an interest is too indirect to justify intervention. Another result of our decision, not suggested by F. H. Smith Company, might be that the Government would take property legally owned by the petitioners which would otherwise be

available for the satisfaction of any judgment which F. H. Smith Company might obtain against them. But this need not give us pause, for it is not urged, and the F. H. Smith Company is contending that the petitioners have no property of their own. Furthermore, it has been held that one creditor may not intervene to prevent another creditor from obtaining judgment against a common debtor. *Horn* v. *Volcano Water Co.*, 13 Calif. 62. Thus, no interest of F. H. Smith Company could be conveniently settled in these proceedings. Our decision will not be *res adjudicata* against the F. H. Smith Company (cf. *Consolidated Gas Co.* v. *Newton*, 256 Fed. 238, 245), and will not directly cause gain or loss to that company. The interest of the F. H. Smith Company in this proceeding is not a legal interest nor so immediate as to need protection in this proceeding or to justify intervention. Furthermore, means of obtaining relief outside these proceedings are available to the F. H. Smith Company. If intervention is discretionary, we refuse to encumber the main controversy with this collateral issue. *United States Trust Co.* v. *Chicago Terminal Transfer Railway Co.*, 188 Fed. 292. Cf. Clephane on Equity Pleading and Practice, p. 351. The F. H. Smith Company has not alleged facts in support of the first two grounds of its motion sufficient to indicate that its presence as a party to this proceeding is necessary, or that the discretion of the Board should be exercised to permit it to intervene. It certainly has no real direct interest in the only question which we can determine, namely, the deficiencies due from these petitioners.

The third ground urged needs no discussion, and we fail to see where intervention will avoid multiplicity of proceedings over which we have jurisdiction. The seventh ground is not supported by any explanation, argument or allegation of fact. But in support of the fourth, fifth and eighth grounds, the F. H. Smith Company argues very strenuously that the purpose of each proceeding before the Board is to determine the true and correct liability of each petitioner for any deficiencies asserted by the Commissioner, and this purpose can only be accomplished in this proceeding through intervention. The above statement of the purpose of the Board needs certain qualifications. Our decision in each case must depend upon the evidence and upon our interpretation of the principles of law which we feel apply in the light of the evidence. But we do not necessarily know all of the facts material in each case. We usually know only such facts as the proper parties to the proceedings have succeeded in proving. We have of course no desire to prevent the disclosure of the facts in any proceeding. But rules of evidence and other principles of law are deemed sufficient safeguards in this connection, and if we follow those principles to the best of our ability, we will have done our duty regardless of whether or not our decision results

318

in the determination of the eternally correct deficiency. The adverse interests of the petitioners and the respondent are usually sufficient to bring out the true facts in proceedings before this Board, and it is the exceptional case where the intervention of an interested third party is necessary or even advisable for this purpose. An altruistic desire of an interested party to bring out facts within his knowledge is not *per se* a sufficient ground for intervention. Here there appears to be no better ground to support the motion. Furthermore, we have no reason to be apprehensive that the Commissioner of Internal Revenue and the petitioners' counsel, in good standing before the Board, will fail to bring out the facts or deliberately agree to and deceive the Board by a stipulation composed of falsehoods.

Taking as broad a view of the situation as the law will permit, we are satisfied that F. H. Smith Company should not be permitted to intervene under the circumstances which have been brought to our attention. Therefore, we have denied the motion.

Reviewed by the Board.